**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BREX INC.,

Plaintiff,

v.

RYAN MACK,

Defendant.

Case No.: 1:24-cv-04192

**COMPLAINT**

Plaintiff Brex Inc. ("Brex," the "Company," or "Plaintiff"), files this Complaint against Defendant Ryan Mack ("Mack" or "Defendant"). In support of this Complaint, Plaintiff states as follows:

## NATURE OF THE CASE

1. This is an action for breach of contract, breach of duty of loyalty, and misappropriation of trade secrets for which Plaintiff seeks a temporary restraining order, preliminary and permanent injunctive relief, damages, and attorneys' fees.

2. Brex is a financial services and technology company offering a range of products, from business credit cards to financial management software for enterprise customers. Brex was founded in 2017, and while its initial offering was a charge card for venture-backed startups, Brex has expanded its suite of financial products, services and enterprise-level software significantly since then.

3. Defendant was a veteran employee of Brex, having joined in 2018 as one of the company's earliest sales hires. On Defendant's last day of employment at Brex, Plaintiff uncovered evidence demonstrating that Defendant used, accessed, and downloaded Plaintiff's trade secrets,

confidential information, and data in his final weeks at Brex, up to and including the hours before his departure. Defendant had no legitimate business reason for accessing or downloading this trade secret information when he did.

4. At the time of his resignation, Defendant informed Brex that he would be joining Ramp Business Corporation ("Ramp"), one of Brex's primary competitors.

5. The trade secrets taken by Defendant include Plaintiff's highly sensitive, confidential material detailing financials and profit metrics; internal systems of account governance and compensation; sales strategies and pipeline development plans; strategies regarding integration of partner services; and management and salespeople's compensation, bonus, and commission structures. With these critical strategy documents, Defendant is now poised to use Plaintiff's misappropriated information and trade secrets to give Ramp an unfair competitive advantage over Plaintiff, at Plaintiff's expense, and for Ramp's and Defendant's own benefit.

**PARTIES**

6. Brex Inc. is a Delaware corporation with its principal place of business in Utah.

7. Upon information and belief, Defendant is a resident of New York.

**JURISDICTION AND VENUE**

8. This Court has federal subject matter jurisdiction over Plaintiff's claim under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq*.

9. This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. § 1367, because all claims are based on a common nucleus of operative fact and all claims form part of the same case or controversy.

10. This Court has personal jurisdiction over Defendant because he lives and works in New York.

11. Venue is proper within this judicial district pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant resides within this district and a substantial part of the events or omissions giving rise to the claim occurred within this district.

## ALLEGATIONS

### Defendant's Employment at Brex

12. Defendant accepted Brex's offer of employment on January 24, 2018.

13. On February 2, 2018, Defendant entered into the Employee Confidential Information and Inventions Assignment Agreement ("CIIAA") with Plaintiff.

14. In Section 1.1 of the CIIAA, Defendant agreed, in pertinent part:

> **Company's Rights; Nondisclosure.** I understand and acknowledge that my employment by Company is a relationship of confidence and trust with respect to Company's Confidential Information (as defined below) and that Company has a protectable interest therein. I will hold in confidence and will not disclose, use, or publish any of Company's Confidential Information throughout and after my employment except as such disclosure, use or publication may be required in connection with my work for Company or as expressly authorized by a Company officer in writing. I will obtain Company's written approval before publishing or submitting for publication any material (written, oral, or otherwise) that discloses or incorporates any Confidential Information.

15. "Confidential Information" is defined in Section 1.2 of the CIIAA as "any and all confidential knowledge, data, or information of Company," and, by way of illustration, specified, *inter alia*:

(a) Trade secrets and other works of authorship;

(b) information regarding marketing and selling, business plans, discounts, pricing and billing policies, quoting procedures, methods of obtaining business, future plans and potential strategies, operational manuals, methods of conducting Company business, suppliers and supplier information;


(c) information regarding customers and potential customers of Company;

(d) information regarding any of Company's business partners or financial services providers and their services;

(e) information regarding personnel, employee lists, compensation, and employee skills.

16. In Section 8 of the CIIAA, Defendant agreed, in pertinent part:

> **RETURN OF COMPANY PROPERTY** When I leave the employ of Company, I will deliver to Company any and all . . . documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third-Party Information or Confidential Information of Company. I agree that I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including but not limited to, Confidential Information, I agree to provide Company with a computer-useable copy of all such Confidential Information and then permanently delete and expunge such Confidential Information from those systems. If required, I will provide Company access to my system as reasonably requested to verify that the necessary copying and deletion is completed. . . .

17. Plaintiff also has an Employee Handbook, to which Defendant was bound. The Employee Handbook includes or incorporates by reference these pertinent policies: "Brex's confidential and proprietary information is vital to its current operations and future success. Each employee should use all reasonable care to protect or otherwise prevent the unauthorized disclosure of such information. For more information on your obligations regarding company confidential information, please consult your CIIAA."

18. Defendant was also subject to the Brex Code of Conduct, which includes or incorporates by reference these pertinent policies, among others:

> Confidential information and PII are protected by US state

>  and federal laws, and international laws. **It is important that you (a) only access or use confidential information or PII as part of work you are required to perform in your job at Brex**; and (b) use all tools and procedures Brex has implemented to protect confidential information or PII from disclosure or misuse.
>
>  **You may not disclose any confidential information or PII outside Brex, or even to persons inside Brex who have no business need to access the information**, without having the appropriate authorization to do so.

(emphasis added).

19. Defendant was also subject to a written Bring-Your-Own-Device Standard, which prohibited, *inter alia*: "Saving or making copies of Brex data locally (screenshots, forwarding emails, etc.) on personal devices or transferring it to an insecure location."

20. As continuing and ongoing consideration for those agreed-upon conditions of employment, Defendant was given several raises during his tenure at Brex, was promoted to Manager, Relationship Management II on July 10, 2021, and later was promoted to Manager, Client Sales Executive in September 2022, the position he held until his departure.

21. As a Manager, Defendant's duties included managing a team of five salespeople focused on serving enterprise customers.

22. By virtue of his position at Brex, Defendant was entrusted with volumes of non-public information relating to customer sales and customer financials, as well internal documents relating to strategy and business development.

**Brex's Efforts to Protect Their Trade Secrets and Confidential Information**

23. Brex has invested considerable time, expense, and resources in its business and managers, including Defendant during his employment, so that they and he could perform their work for Brex competently and successfully.

24. Brex maintains trade secrets that are valuable, confidential, and proprietary to Brex, and that are not generally known in the public domain, including business plans, competitive analyses, and detailed financial analyses and forecasts.

25. Through their work, Brex's sales executives, including Defendant, gain detailed and intimate knowledge of Brex's trade secrets and other confidential information.

26. Brex's trade secrets, confidential information, and business relationships have significant economic value to them. Brex has a legitimate business interest in keeping such information confidential and not allowing its trade secrets and other confidential information to be disclosed to their competitors through any improper means.

27. Brex's trade secrets and confidential information would be of significant economic value to its competitors.

28. Consequently, Brex takes the protection of its information very seriously and expend a considerable amount of time and money to keep their information secure. At all relevant times, Brex has taken extensive and reasonable steps to protect the confidentiality of its trade secrets and other confidential information. This includes:

    (a) Requiring all employees to sign confidentiality agreements;

    (b) Storing Brex's confidential information on secured and password-protected computer systems, which require multi-factor authentication and are accessible only to Brex's personnel;

    (c) Prohibiting company or business-related information from being sent, uploaded to, or received by, personal accounts;

    (d) Requiring periodic information security training for all employees.

29. Brex issued Defendant a company laptop to use exclusively for work purposes.

30. To safeguard its confidential information and trade secrets, Brex actively monitors its IT infrastructure for both external and internal threats.

**Defendant Resigns and Steals Brex's Confidential Information and Trade Secrets**

31. On information and belief, and unknown to Brex at the time, Defendant accepted a position with its direct competitor Ramp in early January of 2024.

32. After accepting this position, and in anticipation of his departure, Defendant began accessing data he had rarely used in performing his duties, and exfiltrating troves of highly sensitive and confidential information from Brex's systems.

33. For example, between January 4, 2024, and January 9, 2024, Defendant accessed Brex's SalesForce platform over 40 times – *five times* more use than he had in the previous month, and with no apparent legitimate purpose given his imminent departure. Brex's SalesForce platform is a software platform that contains confidential information about sales strategies.

34. Defendant also stole numerous confidential strategic documents. On January 15, 2024, two days before his resignation, and without any legitimate business purpose for doing so, Defendant downloaded the following files (collectively, the "Exfiltrated Files"):

 (a) FY'25 Rules of Engagement (ROE) & Variable Compensation Policy;

 (b) Brex Sales Playbook (go/playbook);

 (c) 2024-01 Partnerships Playbook;

 (d) H2 Comp Structure Changes – Managers December 2023;

 (e) Commission - CSE - Ryan's Team (values);

 (f) 2023 - Renewals Program Project Plan;

 (g) [WIP] Brex CSE Renewal Playbook; and

 (h) CSE Hiring Manager Screen: TEMPLATE.

35. Each of the above files contains highly sensitive, confidential information relating to Brex sales strategy and business development.

36. On January 17, 2024, Defendant tendered his notice of resignation to his immediate supervisor by email.

37. That same day, Defendant spoke with Brex's Vice President of Global Sales by phone, and informed him that Defendant had been hired by Ramp to build out that company's customer success team.

38. On Defendant's final day at Brex, and without any legitimate business purpose for doing so, Defendant downloaded a file titled "CSE Hiring Manager Screen: Template." This file contains confidential information.

39. On January 17, 2024, following Defendant's resignation, Brex IT shut off Defendant's access to Brex's systems and issued a lockout command to remotely lock Defendant's Company-issued laptop.

40. On information and belief, Defendant intentionally wiped his Company-issued laptop in order to prevent Brex from being able to retrieve any information from the device. And additional consequence of Defendant's intentional wipe is that Brex was unable to remotely lock the machine.

41. On January 19, 2024, Brex sent Defendant a letter demanding that he return his Company-issued laptop with its data intact so that Brex could conduct a full forensic investigation. The letter also put Defendant on notice of his duty to preserve evidence more generally.

42. Defendant admitted to having uploaded the Exfiltrated Files to his personal Google Drive account, in violation of Company policy.

43. Defendant made his personal Google Drive account available to forensic inspection and remediation by a third-party vendor, which did locate and delete Brex's files from Defendant's Google Drive account.

44. After some delay, another third-party vendor received Defendant's Company-issued laptop from Defendant, on behalf of Brex.

45. Upon receipt of Defendant's Company-issued laptop, Brex's third-party vendor determined that all user and system data on the machine had been deleted (*i.e.*, it had been "wiped clean"), and that this wipe had been executed by the user (*i.e.*, by Defendant).

46. Brex did not wipe Defendant's Company-issued laptop.

47. Brex was unable to conduct a full forensic investigation because no user or system data remained on Defendant's company issued laptop.

48. Upon information and belief, Defendant wiped his Company-issued laptop to prevent Brex from discovering the full extent of his unlawful activity, including his misappropriation and theft of confidential information and trade secrets, and his further dissemination of the Exfiltrated Files and other Confidential Information as that term is defined in the CIIAA.

49. On May 17, 2024, Brex salesperson Ryan McGuigan ("McGuigan") left Brex to work at Ramp.

50. Defendant had been McGuigan's team manager while at Brex.

51. McGuigan was the top performing salesperson on the team managed by Defendant.

52. Upon information and belief, Defendant used the confidential information he misappropriated from Brex to recruit McGuigan, going so far as to negotiate McGuigan's compensation package at Ramp.

53. On information and belief, Defendant is still employed by Brex's direct competitor, Ramp, in the role of Head of Sales.

54. Defendant is uniquely situated in this role to misappropriate Brex's confidential information and trade secrets to his and Ramp's unlawful advantage and Brex's extreme detriment.

55. Upon information and belief, Defendant continues to misappropriate Brex's trade secrets and confidential information.

## COUNT I

### FEDERAL DEFEND TRADE SECRETS ACT

(Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq*.)

56. Plaintiff repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

57. The files improperly accessed and retained by Defendant throughout January of 2024 (the "Exfiltrated Files"), constitute trade secrets within the meaning of the DTSA because:

(a) Such information is not known outside Plaintiff's business.

(b) Plaintiff takes reasonable measures to protect the secrecy of this information. This information is highly valuable and derives its value from being secret. Plaintiff expends considerable effort to generate this information.

(c) This information is very difficult for others to properly acquire or duplicate without Plaintiff's authorization and is not readily ascertainable.

(d) This information would be highly valuable to Plaintiff's competitors.

58. Defendant used improper means to willfully and maliciously misappropriate this information in that he accessed and downloaded the information in his final days of employment without any legitimate business reason for doing so, and transferred that information to his personal Google Drive and likely to other devices and accounts – in violation of Company policy and in breach of the CIIAA.

59. On information and belief, Defendant misappropriated Plaintiff's trade secrets so that he could further copy them and use them in his new role as Head of Client Sales at Ramp.

60. On information and belief, Defendant has used such information to Plaintiff's detriment since his departure, including to solicit Brex employees for employment at Ramp, build out Ramp's customer success operations, and solicit Brex customers for business with Ramp.

61. Plaintiff has suffered irreparable harm as a result of such conduct, will continue to suffer irreparable harm in the absence of an injunction, and has no adequate remedy at law without an injunction.

62. As a direct and proximate result of Defendant's conduct, Plaintiff is entitled to actual damages in an amount to be determined at trial. Defendant's acts and conduct were willful and malicious, justifying an award of exemplary damages and attorneys' fees.

## COUNT II

## BREACH OF CONTRACT

63. Plaintiff repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

64. Defendant's CIIAA is a valid contract supported by adequate consideration, and Plaintiff has the authority to enforce it.

65. Plaintiff has performed all of its obligations under the CIIAA and all other understandings with Defendant.

66. Defendant breached Section 1.1 of the CIIAA by taking, disclosing, and using Plaintiff's Confidential Information (as defined in the CIIAA) outside the course of his employment with Plaintiff, including but not limited to files relating to client sales, strategy, business and business development, as well client financials and sales leads, and he will inevitably continue to disclose this Confidential Information in his role as the Head of Sales of Ramp.

67. Defendant breached Section 8 of the CIIAA by, *inter alia*, copying, deleting, or altering information contained on his Company-issued computer before returning it to Brex.

68. Defendant continues to violate his contractual obligations and will continue to violate these obligations in the future.

69. Because of the foregoing, Plaintiff has suffered and will continue to suffer irreparable harm for which it lacks an adequate remedy at law, as well as present and future economic harm which is unascertainable at the present time.

70. As result of Defendant's breaches of Sections 1.1 and 8 the CIIAA, Plaintiff has suffered and will continue to suffer damages, which will continue to accrue in the form of lost profits and other damages in an amount to be proved at trial.

**COUNT III**

**BREACH OF DUTY OF LOYALTY**

71. Plaintiff repeats and re-alleges each and every allegation stated in the preceding paragraphs of the Complaint as if fully set forth herein.

72. As sales executive and employee of Plaintiff, Defendant owed Plaintiff a duty of loyalty.

73. As a result, Defendant was obligated to act with the utmost good faith and in Plaintiff's best interests.

74. Plaintiff was entitled to place its trust and confidence in Defendant and was entitled to expect Defendant to act with the utmost good faith toward Plaintiff in carrying out Plaintiff's business.

75. Plaintiff relied on Defendant's loyalty and integrity and faithful performance of his job duties and responsibilities.

76. Defendant's unfaithful conduct – including but not limited to his use of confidential information to recruit Brex employees on behalf of Ramp – constitutes a knowing and willful breach of his duty of loyalty toward Plaintiff.

77. As a direct and proximate result of Defendant's breach of his fiduciary duties, Plaintiff has been and is being harmed and faces irreparable injury.

78. Defendant's actions were done with malice, fraud, oppression, and reckless disregard of Plaintiff's above-described rights. Therefore, Plaintiff seeks and is entitled to recover punitive damages from Defendant.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

1. Preliminary and permanent injunctive relief:

   (a) enjoining Defendant, as well as any third party to which Defendant disclosed Plaintiff's Confidential Information or trade secrets from using or disclosing same;

   (b) ordering Defendant to submit his personal computing devices (including cellular phones), email or cloud-storage accounts, and external media storage devices in his custody, possession, or control (including any such devices or accounts used by him or his household members personally) for independent forensic inspection and remediation to purge any copies of Plaintiff's Confidential Information or trade secrets found thereon;

2. Compensatory damages, in an amount to be determined at trial;

3. Disgorgement of past compensation in all forms including reimbursement for travel and other purported business expenses during Defendant's period of disloyalty, in an amount to be determined at trial;

4. Punitive or exemplary damages pursuant to 18 U.S. Code § 1836 and New York common law;

5. Plaintiff's reasonable attorneys' fees and costs pursuant to 18 U.S. Code § 1836;

6.  A jury trial on all claims so triable;

7.  Pre-judgment interest; and

8.  Such other and further relief, legal and equitable, that this Court deems just and proper.

Dated at New York, NY on May 31, 2024.

                                        Respectfully submitted,

                                        /s/ *Miguel A. Lopez*
                                        Miguel A. Lopez
                                        LITTLER MENDELSON, P.C.
                                        900 Third Avenue, 8th Fl.
                                        New York, NY 10022
                                        Telephone: 212.583.9600
                                        Facsimile: 212.832-2719
                                        malopez@littler.com

                                        David Kruger (motion for admission pro hac vice forthcoming)
                                        LITTLER MENDELSON, P.C.
                                        321 North Clark Street
                                        Suite 1100
                                        Chicago, IL 60654
                                        Dkruger@littler.com